IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

BRIAN SASS,  )
       Petitioner,  )  CASE NO.   2:07-cv-1603 BJR
         )
       v.  )
         )  ORDER DENYING PETITION FOR
         )  WRIT OF HABEAS CORPUS
M.C. KRAMER,  )
       Respondent.  )
_____

I.   INTRODUCTION

Petitioner is a California state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is serving a sentence of fifteen-years-to-life imprisonment in the California Department of Corrections imposed following his 1988 conviction for second degree murder. Petitioner became eligible for parole on September 27, 1997; he has been denied parole a total of six times since then. In this petition, Petitioner challenges the denial of parole that occurred in 2006.

II.   FACTURAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was sentenced to life in prison, with the possibility of parole after fifteen years, as a result of his 1988 convictions for second degree murder, hit and run death, gross vehicular manslaughter, and felony drunk driving. Petitioner's 1988 convictions were based on the

1

following events: while operating his truck under the influence of drugs and alcohol, Petitioner drove into oncoming traffic and caused a head-on collision, which killed a 27-year-old woman who was five months pregnant. At the time of the collision, Petitioner had four DUI convictions on record, with three more DUI charges pending. He had failed previous grants of probation.

Petitioner does not challenge the validity of his 1988 convictions with the present petition. Rather, he seeks collateral relief from the decision of the California Board of Parole Hearings (the "Board"), which has denied him parole six times. The current petition challenges the results of the 2006 parole proceedings.

The Board first found him unsuitable for parole on November 25, 1996. On March 25, 1999, the Board held a subsequent parole consideration hearing, and found Petitioner unsuitable for parole because Petitioner "would pose an unreasonably risk of danger to others—to society and a threat to public safety if released from prison." *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1125 (9th Cir. 2006) (*Judge Reinhardt dissenting*). The Board cited the "especially cruel manner" in which his offense was carried out, "[his] escalating pattern of criminal conduct," and his "unstable social history with prior criminality" to support its unsuitability determination. *Id*. On July 27, 2000, the Board held a third parole hearing, and again found that Petitioner would pose an unreasonable risk of danger to society if released from prison. *Id*. at 1126. The Board cited the "total disregard for human suffering" demonstrated by the manner of his offense and his previous criminal history to support its determination. *Id*.

Petitioner challenged the Board's 1996, 1999 and 2000 decisions in a habeas petition filed in the United States District Court, Eastern District of California. On September 12, 2002, the district court held that all challenges to Petitioner's 1996 parole proceeding were time-barred. Consequently, the district court only addressed Petitioner's challenge to the 1999 and 2000

parole proceedings, both of which were affirmed by a state trial court, a state appellate court, and the Supreme Court of California. On March 16, 2005, the magistrate judge recommended that Petitioner's habeas petition be granted and that he be given a parole date within thirty days of the adoption of the findings. On June 15, 2005, the district court rejected the magistrate's findings and recommendations, and denied the petition. The district court held that Petitioner did not have a liberty interest in parole under clearly established federal law.

Petitioner appealed to the United States Court of Appeals, Ninth Circuit, which affirmed the decision on August 31, 2006. *See Sass*, 461 F.3d at 1123. The Court held that Petitioner does have a constitutionally protected liberty interest in a parole date, but affirmed the decision on other grounds supported by the record. *Id.* at 1128-29.[1] Specifically, the Ninth Circuit held that the Board's reliance on the gravity of Petitioner's convicted offenses in combination with his prior offenses amounted to "some evidence" sufficient to support the Board's determination. *Id.*

Thereafter, on November 14, 2001, the Board once again denied Petitioner parole. The Board again cited as support for its decision that the "offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." The Board concluded by stating: "You know, it's—it comes down to—sometimes it comes down to—just what's a life worth? How long? And you're in that tunnel and you're starting to get there to see the light at the end of it. You just have to continue to go through it for a while longer." (Dkt. No. 1, Exhibit B at 36.) The Board denied Petitioner parole again on November 15, 2002, citing substantially identical support for its determination. *Id.* at 40-41.

---

[1] This portion of the ruling was eventually overruled by *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (holding that to the extent that the Court's prior decisions including *Sass v. Cal. Bd. of Prison Terms* and *Biggs v. Terhune* might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release, the Court rejects that reading and overrules those decisions).

Petitioner met with the Board again on March 25, 2004 and it again denied parole. *Id*. at 43. This time the Board was concerned with a letter that Petitioner submitted to the Board at some point in 2002.[2] Petitioner stated in the letter:

> Scientifically and medically a DUI causes fatality from an automobile accident at no more or less an act of malice or unlawful intent to cause human suffering than a vehicular fatality caused by a driver with a diagnosed risk of heart failure, cerebral haemorrhage, diabetic coma, hypoglycaemia, narcolepsy, epilepsy, or a host of other physical and psychological health problems and addictions, which could easily mimic alcohol intoxication. The only difference is simply that the degree and application of the law used to punish a person who has indulged in one or the other while being involved in a vehicular accident under the California Highway System.

*Id*. at 68. The Board felt that the letter strongly indicated that Petitioner had not yet accepted responsibility for his crime. *Id*. at 51. The Board instructed that a new psychiatric evaluation be done by a doctor, specifically addressing Petitioner's potential for violence and substance abuse. *Id*. at 53.

The Board once again denied Petitioner parole in 2006, the subject of the present petition. The Board questioned Petitioner extensively about the 2002 letter. Petitioner claimed that he did not write the letter, rather a "jailhouse lawyer" wrote the letter for him and submitted it on his behalf. *Id*. at 49. However, he admitted that he reviewed the letter before it was submitted to the Board. He acknowledged that he used poor judgment in submitting the letter and stated that the content of the letter does not "accurately describe [his] rehabilitation that [he has] gotten from all those self-help programs, and how [he] really feels about what [he] did to the victim and her family." *Id*. at 46. Nevertheless, the Board was not persuaded that Petitioner had accepted responsibility for his crime, nor that he would not resort to alcohol and drug use again if

---

[2] The undersigned has not had an opportunity to review the complete letter because a copy of it has not been provided to this court, but portions of it are set forth in the transcript of the 2006 parole hearing.

released. *Id*. at 47-48, 51. The Board cited the letter as a basis for denying Petitioner parole. *Id*. at 88.

Petitioner filed a writ for habeas corpus in the Los Angeles Superior Court on August 7, 2006. The Court denied the petition finding no legal basis to grant the relief sought. He then filed a petition in the California Court of Appeal which was summarily denied on January 16, 2007. On February 28, 2007, he filed a petition in the California Supreme Court. The petition was summarily denied on July 11, 2007. Petitioner then filed the present writ for a petition of habeas corpus in the United States District Court, Eastern District of California on August 6, 2007. The matter was transferred to this court on June 18, 2010.

### III.  DECISION

*A.  Standard of Review*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004) Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented. . . ." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this court must ascertain whether relevant federal law was

5

"clearly established" at the time of the state court's decision. To make this determination, the court may only consider the holdings, as opposed to *dicta*, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id.* at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable." *Id.* at 411. It is the petitioner's burden to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

AEDPA also requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Federal courts are bound by a state's interpretation of its own laws. *See Murtishaw v.*

6

*Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (*citing Powell v. Ducharme*, 998 F.2d 710, 713 (9th Cir. 1993)). This deference, however, is accorded only to "reasoned decisions" by the state courts. To determine whether the petitioner has met this burden, a federal habeas court looks to the last reasoned state court decision because subsequent unexplained orders upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007).

*B.     Due Process Right under California's Parole Scheme*

Under the Fifth and Fourteenth Amendments to the U.S. Constitution, the federal and state governments are prohibited from depriving an inmate of life, liberty or property without the due process of law. U.S. Const. amends. V, XIV. A prisoner's due process claim must be analyzed in two steps: the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of Corrections. v. Thompson*, 490 U.S. 454, 460 (1989).

Accordingly, our first inquiry is whether Petitioner has a constitutionally protected liberty interest in parole. The U.S. Supreme Court articulated the governing rule in this area in *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1 (1979), and *Board of Pardons v. Allen*, 482 U.S. 369 (1987). *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen*" to California's parole scheme). The Court in *Greenholtz* determined that although there is no constitutional right to be conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7,

12; *Allen*, 482 U.S. at 377-78.

The California statutes and regulations at issue in this case contain mandatory language providing that a prisoner serving an indeterminate life sentence has an expectation of parole unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to society if released from prison." 15 CCR § 2402(a). Specifically, California Penal Code § 3041(b) provides that the Board "shall set a release date unless it determines . . . that consideration of the public safety requires a more lengthy period of incarceration for this individual. . . ." Cal. Penal Code § 3041(b) (emphasis added). The California Supreme Court has interpreted this language to provide that an adverse parole decision must be supported by "some evidence" demonstrating current dangerousness. *See In re Lawrence*, 44 Cal.4th 1181, 1204 (2008); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). Thus, the California Supreme Court has held that as a matter of state constitutional law, this mandatory language in California's parole scheme creates a liberty interest in parole. *See Lawrence*, 44 Cal.4th at 1204; *Shaputis*, 44 Cal.4th at 1254, 1258.

Next, this court must determine whether the procedures accompanying the state's interference with Petitioner's liberty interest in parole were constitutionally sufficient. *Thompson*, 490 U.S. at 460. The Ninth Circuit recently considered this question in *Hayward v. Marshall*, and concluded that the appropriate inquiry for a federal habeas court is whether "some evidence" of current dangerousness supported the Board or Governor's denial of parole. *Hayward*, 603 F.3d at 563. In other words, the Board may decline to set a parole date only upon a finding that Petitioner's release would present an unreasonable current risk of danger to society if he is released from prison. Therefore, this court must deny relief if there is "some evidence" in

the record to support the parole authority's finding of current dangerousness. *Id*. That is the determinative issue in this case.

C.     *The Board's 2006 Decision*

On February 2, 2006, the Board rendered the following decision in denying Petitioner parole, in relevant part:

> [T]he Panel reviewed all information received from you and from the public and relied on the following circumstances in concluding that you're not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The offense was carried out in an especially cruel and callous manner. And despite prior DUI arrests you were driving under the influence and on a suspended license. The offense was carried out in a dispassionate manner in that you knew you were under influence, and yet chose to drive a vehicle. As to your prior record, you do have a record of prior criminality, which includes prior DUI arrests, and also by your own admission polysubstance abuse. You have failed society's attempt to correct your criminality in that you were on probation at the time of the offense, and you were pending trial in three separate DUIs. Your institutional programming has been commendable. You completed your GED and you have attained units of college in prison. You have continuously engaged in AA and NA since 1992…And your disciplinary violations in your history should only two 115s, and those were minor…Also, your psych report is generally favourable…We find your parole plans realistic as well…We note …opposition to a finding of parole suitability…by the District Attorney of Los Angeles County…*And I note that the Board has considered Mr. Sass' letter...we did consider it in light and context of all the other material that we considered for this hearing. We put appropriate weight on it, and we asked the questions we needed to, and weighed the evidence accordingly.*

(Dkt. No. 1, Exhibit A at 86-88 (emphasis added).) The Board concluded by recommending that Petitioner stay "discipline free, get self-help, get therapy, and continue to develop professionally and educationally"—virtually the same recommendation it made at the conclusion of his five prior parole hearings.

It is undisputed that Petitioner had a chronic problem with alcohol prior to admission to prison, a problem he had denied prior to his conviction. However, at the time of his 2006 parole hearing, Petitioner had participated in Alcoholics Anonymous (AA) for 14 years, since January 1992, which was the earliest he could enrol in AA given his custody status. Petitioner denies any use of alcohol in prison and has never been disciplined for such use. As early as his 1996 parole hearing, Petitioner's alcohol problem had been deemed by the evaluating psychiatrist as being in "institutional remission," an impression confirmed at his next five parole hearings. (*See* Dkt. No. 1, Exhibit C at 7.) As of the 2006 hearing, Petitioner had been discipline-free since 1994 and had never been disciplined for violence or addictive behaviour. *Id*.

As of 2002, the evaluating psychologists reported that Petitioner's "risk to the community ha[s] changed significantly," and "risk to the community has reduced significantly." *Id*. at 33. This finding has remained consistent, culminating in the evaluating psychologist reporting in 2005 that "[Petitioner] would rate in the extremely low range in terms of his risk management for the future." *Id*. at 24. In addition, Petitioner has no history of mental illness and is described as having "outstanding insight into the factors that led up to [his] crime. His remorse for the victim and the victim's family is unprecedented in this system." *Id*. at 23.

The Board has repeatedly cited the gravity of Petitioner's convicted offenses in combination with his prior DUI arrests as a basis for denying him parole. The Ninth Circuit has warned that "continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2002) (*overruled on other grounds*). Indeed, as Judge Reinhardt stated in his dissent in *Sass v. Cal. Bd. of Prison Terms*, the Board may as well treat "all recovering alcoholics as a

permanent danger to society, regardless of their level of recovery and of the state of their rehabilitation generally, and thus deny *all* such individuals parole eligibility for the remainder of their lives, no matter how deserving the release may be." *Sass*, 461 F.3d at 1132 (emphasis in original).

Nevertheless, the present petition challenges the 2006 parole proceeding only, and, in that proceeding, the Board specifically cited the 2002 letter as a basis for denying parole. The Board's decision implies that it felt that the letter demonstrated that Petitioner had not fully accepted responsibility for his crime, and thereby, posed a future risk of dangerousness to society. The Board expressed its concern that Petitioner would resume his drug and alcohol abuse if he was released from prison. (Dkt. No. 1, Exhibit A at 48-49 ["We are concerned...about putting you out in the general populous, having you get stressed [] and resort to a drug again."].)

The "paramount consideration for...the Board...under the governing statutes is whether the inmate currently poses a threat to public safety." *In re Lawrence*, 44 Cal.4th at 1210. The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state supports the inference of dangerousness." *Id*. at 1214. The Board found that Petitioner's current mental state, as exhibited by the 2002 letter, supported an inference of dangerousness. As such, this court finds that the California judicial decisions approving the Board's 2006 determination were not an "unreasonable application" of the California "some evidence" requirement, nor based on an "unreasonable determination of the facts in light of the evidence." Accordingly, there is no basis for federal habeas relief.

## IV. CONCLUSION

Based on the foregoing, the Writ for Petition of Federal Habeas Corpus is DENIED.

DATED this 4th day of August, 2010.


                        */s/ Barbara Jacobs Rothstein*

                        Barbara Jacobs Rothstein
                        U.S. District Court Judge